IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IOU CENTRAL, INC. <br> d/b/a IOU FINANCIAL, INC <br><br> Plaintiff, <br> vs. <br><br> ICAR COLLISION CENTER, INC. <br> D/B/A GEORGE'S AUTO BODY <br> AND PAINT, <br> HAKOB NAVASARD A/K/A <br> HAKOB NAVASARDIAN, <br> RR AUTO GROUP, INC., <br> ARSHAYLUS PAMBUKYAN, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : CASE NO. 1:19-CV-04534-CC <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**OPINION AND ORDER ON MOTION FOR
FINAL DEFAULT JUDGMENT**

This matter is before the Court on Plaintiff IOU'S Amended Motion for Default Judgment [Doc. No. 9] ("Motion for Default Judgment"). Having considered the Motion for Default Judgment and pertinent portions of the record, the Court finds that a hearing is not required and, for the reasons stated below, the Court **GRANTS** Plaintiff's Motion for Default Judgment.

**I.    BACKGROUND**

    **A.    Factual History**

As alleged in the Complaint [Doc. No. 1], Defendant Hakob Navasard incorporated Defendant ICAR in California with a business address at 7239 Woodley Road, Van Nuys, CA 91406 (the "Woodley Property"), and resides at 3455 Linda Vista Road, Glendale, CA 91206. Defendant Arshaylus Pambukyan resides at 6717 Calhoun Ave, Van Nuys, CA 91405-4753, Parcel Id. 2237007-010, and has bad credit and/or a criminal history.

Plaintiff alleged Navasard's and/or Pambukyan's actual or original names are different than their captioned names, which they use to conceal bad credit and/or a criminal history, particularly as Plaintiff learned that Navasard has considerable debt under his above alias. On December 14, 2018, Navasard submitted a loan application (the "Application") to IOU's website, at its Georgia office, for a commercial loan ("Loan") in which Navasard represented to IOU, on behalf of ICAR, that he sought a commercial loan from IOU on behalf of ICAR, a legal entity, whose address was the Woodley Property address, solely for business/commercial purposes of marketing/expansion. He further represented, on behalf of ICAR, that they would and could repay the Loan, and he authorized ACH withdrawals from their business account and submitted bank statements and other documents to this effect.

On December 27, 2018, Navasard spoke by phone with IOU's Georgia staff, confirming the information in the Application, the call, and the below Loan Documents. IOU confirmed ICAR's status and sole occupancy of the Woodley Property, but Navasard and ICAR did not disclose other entities besides ICAR at the Woodley Property. That day, Navasard electronically executed a Promissory Note to IOU, on behalf of ICAR, for the principal sum of $150,000.00 and a gross loan amount of $169,500.00, at IOU's Georgia office, through its website, in exchange for IOU's Loan funds (the "Funds"), which confirmed the information in the Application and the telephone call as to the Application.

The Note includes a Security Agreement, under which Navasard/ICAR guaranteed their real and/or personal property as collateral for the Loan, which states:
> As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under this Note and all extensions, renewals and amendments of any of the foregoing Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible, and in each case regardless of where such

> Property may be located and whether such Property may be in the possession of Borrower, Lender or a third party and shall include any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible and (1) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions: and (2) all other tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes, (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health care insurance receivables, (i) deposit accounts, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The collateral includes all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products, proceeds and collections thereof and all records and data relation thereto.

(Promissory Note ¶ 21.)

On December 27, 2018, Navasard electronically executed a Guaranty of the Note, at IOU's Georgia office, by its website, unconditionally guaranteeing the Note and Security Agreement, including on all property owned by him and/or ICAR. Under the Guaranty, Navasard granted and/or intended to grant the same security interest in his property and that of ICAR to guaranty performance of the Instruments, including the Security Agreement, as both received and personally benefitted from the Funds. The Note and Guaranty provide that Navasard/ICAR agree to Georgia personal jurisdiction, which binds the other Defendants as shown here.

On December 27, 2018, Navasard executed an Electronic Debit Agreement, on behalf of ICAR, at IOU's Georgia office, by its website, identifying both as the Payor, authorizing electronic payments for the Loan, from their account to IOU's Georgia office, certifying this Agreement was to pay the Loan and the accuracy of their account information. That day, he and ICAR approved disbursement of the Loan Funds, at IOU's Georgia office, by its website, for the alleged purposes of the Loan and received the Funds by wire transfer from IOU's account at an FDIC-insured bank.

IOU received a fraud alert from Data Merchant that Navasard submitted fraudulent loan/citizenship documentation to a lender, Expansion Capital Group. On January 4, 2019, IOU recorded a UCC-1 Financing Statement in California, providing notice of its Security Agreement and Loan with Navasard/ICAR, Instrument No. 197690415840. Navasard/ICAR closed their FDIC-insured account on January 4, 2019, to block pre-approved ACH payments for the Loan to IOU's Georgia office and made no payments on the Loan, aside from a nominal administrative fee.

On February 15, 2019, Defendant Pambukyan incorporated Defendant RR Auto Group ("RR") in California, with a business address at the Woodley Property, performing automotive body repair as did ICAR. IOU's staff called ICAR's number before and after this day, answered by ICAR's staff, who confirmed Navasard/ICAR were at this number but unavailable. Since February 15, 2019, Pambukyan and RR operated their business from the Woodley Property. This began less than 60 days after IOU provided the Funds to Navasard /ICAR for that same business at that same address, subject to and/or who assumed the Loan, with notice.

On February 27, 2019, Navasard financed debt on his property located at 3455 Linda Vista Road, Glendale CA 91206, per a Deed of Trust for $361,390.00 executed by him that day, recorded April 22, 2019, Doc No. 2019 356294, listing his address as the Woodley Property, at which he still conducted business with Pambukyan/RR. (IOU does not dispute or seek to challenge the lien position of the holder of the Deed.) On March 2, 2019, IOU sent an investigator to the Woodley Property, and an employee of Pambukyan/RR confirmed to the investigator that Pambukyan/RR purchased ICAR. As of April 2019, the Van Nuys facility included a sign indicating it was under 'New Management," referencing RR's logo and telephone number: 818-616-4149.

Plaintiff alleges the Defendants are jointly and severally liable for the Loan, Instruments and Funds as (a) a joint enterprise/agents for each, by applying for the Loan/obtaining the Funds;

(b) operate as and/or are a partnership from the Woodley Property for their automotive business; share/co-mingle their receipts/profits of the business; whose principals are Navasard /Pambukyan, intended partners, who agreed to contribute or contributed money or property to their business, such as the Funds, to acquire assets and personnel for their business such as the Woodley Property and/or related business assets; (c) and/or Pambukyan/RR purchased ICAR, assumed and are liable for the Loan; which agreed to assume the Loan, under the Instruments; merged with ICAR; fraudulently attempted to avoid the Loan and/or are a mere continuation of ICAR.

Plaintiff alleges that Navasard /ICAR lied to IOU throughout their Application and closing process and never disclosed to IOU the alleged sale of their business to Pambukyan/RR or their legal issues. Plaintiff further alleges that Navasard/ICAR sought and obtained the Funds for the benefit of and on behalf to Pambukyan/RR to pay their debts and/or acquire assets/personnel for their business, such as the Woodley Property and/or related business assets, from which they jointly benefited.

Plaintiff alleges Defendants did and/or conspired to make false/misleading representations or omissions of material fact to IOU through Navasard/ICAR, knowingly misrepresented and/or failed to disclose to IOU that (a) they sought the Funds only to satisfy their personal debt and/or benefit their business with the other Defendants; (b) they promised to repay the Funds, which they would not and/or could not repay; (c) they terminated their online account; and (d) their documents, such as statements and other documents, were false. Plaintiff further alleged IOU would not have loaned the Funds if these facts were disclosed, upon which IOU actually and justifiably relied as honest and accurate in the Application/Loan Documents, during the call and per their electronic approval for disbursement of the Funds, which resulted in IOU wiring the Funds to them.

IOU held and/or owned the Note, Guaranty ("Instruments") and claims at issue ("Claims") with standing to enforce them before commencing suit, their principal balance and/or value exceeding

$76,000.00, with attorney's fees by law and their terms, which the Defendants breached and/or did not satisfy, not making payments and/or not fulfilling other obligations on them, in default; and accelerated payment of their balance.

Plaintiff alleges it conferred the Funds upon Defendants of which they had knowledge, by their de facto partnership. Defendants appreciated, authorized, requested and/or accepted and ratified them, used them to pay their debts and/or acquire assets and personnel for their business, such as the Woodley Property and/or related business assets, and benefited from and retained them. Plaintiff alleges Defendants should return or compensate the Funds, or they will otherwise be unjustly enriched at IOU's expense.

Plaintiff alleges Defendants are indebted to IOU for the unpaid balance of the Funds, interest, fees, costs and other charges per law; are liable for Navasard/ICAR's acts/omissions, as their partners, servants/agents and/or successors and having obtained the Funds, by their command, in prosecution of and in the scope of their partnership, business, enterprise or succession with the other Defendants, by which they jointly benefited and ratified. All conditions precedent to suit occurred, were fulfilled, waived and/or their occurrence and/or fulfillment was unnecessary and/or futile.

  **B.**   **Procedural History.**

The Complaint [Doc. No. 1] seeks reformation and declaratory relief for the Instruments to include all Defendants, their property, assets and proceeds [Count I: Complaint ¶¶ 45-57]; an equitable lien/equitable mortgage on their property, proceeds and business assets, including the Woodley Property, securing its Instruments [Count II: Complaint ¶¶ 58-63]; a constructive trust on their property, proceeds and business assets, securing its Instruments, if the relief in Count II is not granted [Count III: Complaint ¶¶ 64-69]; judgment on the reformed Instruments as to all Defendants [Count IV: Complaint ¶¶ 70-77]; judgment for quantum meruit/unjust enrichment as to Pambukyan/RR if the relief in Count I is not granted [Count V: Complaint ¶¶ 78-83]; attorney's fees and costs against

against Pambukyan/RR if the fee relief in Count IV is not granted as to them [Count VI: Complaint ¶¶ 84-88].

The Instruments are in default for the unpaid debt [Complaint ¶¶ 37-38], as further detailed in the Motion for Default Judgment, as follows:

| | |
|---|---|
| Unpaid Principal Balance: | $139,887.06 |
| Accrued Interest: from | |
| 03/3/19–12/18/19 at 9.25% per annum | $10,244.90 |
| 3/3/19: Date of Last Payment | |
| Subtotal of Principal and Interest | $150,131.96 |
| Attorney's Fees: | $15,013.10 |
| [10% of principal + interest per 13-1-11] | |
| N.S.F. Balance | $45.00 |
| Court Costs | |
| Court Filing Fee: | $400.00 |
| Service of Process: | $525.00 |
| $150.00 Defendant Pambukyan | |
| $75.00 Defendant RR | |
| $150.00 Defendant Navasard | |
| $150.00 Defendant ICAR | |

IOU filed suit [Doc. No. 1] as to the Defendants, who were served with process [Doc. Nos. 3-6] but did not answer or respond to process and against whom default was entered on November 12, 2019.

## II.   Standard of Review.

Pursuant to Fed. R. Civ. P. 55 (a) and the entries of default above, the Defendants admitted the Complaint's well-pled allegations and waived all defenses by their defaults. ***Buchanan v. Bowman***, 820 F.2d 359, 361 (11th Cir. 1987); ***Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC***, 684 F.3d 1211, 1221-22 (11th Cir. 2012). Default judgment may be entered against a defendant who never appears or answers, as the case was never placed at issue. ***Solaroll Shade and Shutter Corp. v. Bio-Energy Sys., Inc.***, 803 F.2d 1130, 1134 (11th Cir. 1986). There must be a sufficient basis in the pleadings for judgment. ***Nishimatsu Constr. Co. v. Houston Nat'l Bank***, 515 F.2d 1200, 1206 (5th Cir. 1975).

In diversity cases, the Court applies substantive state law and federal procedural rules. ***Horowitch v. Diamond Aircraft Indus., Inc.***, 645 F.3d 1254, 1257 (11th Cir. 2001) (*citing **Erie R.R. Co. v. Tompkins***, 304 U.S. 64 (1938)). The Court may enter judgment for liquidated damages on the debt owed Plaintiff in the above amounts, as the damages are capable of mathematical computation or may be ascertained from definite figures set forth in documentary evidence or detailed affidavits, such as this Motion for Default Judgment. ***United Artists Corp. v. Freeman***, 605 F.2d 854, 857 (5th Cir. 1979); ***Adolph Coors Co. v Movement Against Racism and the Klan***, 777 F.2d 1538, 1543-44 (11th Cir. 1985). The Court may award damages, including attorney's fees, in the context of a default judgment. ***Hartford Ins. Co. v. Mobley***, 164 Ga. App. 363, 363, 297 S.E.2d 312 (1982).

### III.     Liability.

Plaintiff is entitled to the relief in the Complaint under Georgia and/or federal law, for all remedies to obtain the relief to which Plaintiff is entitled. Pursuant to O.C.G.A. §§ 9-2-3 and 9-2-4, a plaintiff may pursue consistent or inconsistent remedies against the same person or persons until the plaintiff obtains a satisfaction from some of them. "[S]tate law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts." ***Guaranty Trust Co. of N.Y. v. York***, 326 U.S. 99, 106 (1945). "[A] court's equitable powers can extend to setting aside or enjoining the enforcement of rights purportedly created by a tainted transaction." ***SSMC, Inc. v. Steffen***, 102 F.3d 704, 708 (4th Cir. 1996) (*citing **Mills v. Electric Auto-Lite***, 396 U.S. 375, 385 (1970)).

Defendants admitted being jointly and/or severally liable for the debt as a joint enterprise, agents, partnership, successors, who assumed the Loan, merged with ICAR, fraudulently attempted

to avoid the Loan, and are a continuation of ICAR. (Complaint ¶¶ 29-32.) A successor entity assumes the liabilities of its predecessor if (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the successor is a mere continuation of the predecessor. **Dan J. Sheehan Co. v. Fairlawn on Jones Condo. Ass'n, Inc.**, 334 Ga. App. 595, 597, 780 S.E.2d 35 (2015). "The latter of these circumstances refers to 'the common law doctrine of corporate continuity, which applies where there is a substantial identity of ownership and a complete identity of the objects, assets, shareholders, and directors.'" *Id.* (citations, internal marks, and alterations omitted).

The facts in this case support a finding of liability by Pambukyan/RR for the Loan under Georgia law. Defendants admitted operating their same car business from the same address. Pambukyan/RR purchased ICAR, and they are a joint enterprise and partnership. Pambukyan/RR assumed and are liable for the Loan, as they admitted the assumption of the Loan and merger with ICAR. The fraudulent attempts to avoid the Loan are a mere continuation of the actions of ICAR. Navasard/ICAR lied throughout their Application and the closing process and never disclosed the alleged sale of their business to Pambukyan/RR or their legal issues to IOU; sought and obtained the Funds for the benefit of and on behalf Pambukyan/RR to pay their debts and/or acquire assets and personnel for their business, such as the Woodley Property and/or related business assets, from which they jointly benefited. (Complaint ¶¶ 27-34.)

Therefore, a relation of creditor and debtor existed between Plaintiff and all Defendants, as Pambukyan/RR admitted purchasing ICAR's business, which they assumed along with the Loan, for which they are now also liable under Plaintiff's claims. **Hodge v. Howes**, 260 Ga. App. 107, 109, 578 S.E.2d 904 (2003) (individual owner of car dealership company became its successor and liable on plaintiff's loan to which a creditor debtor relationship existed after company sold its assets to him during creditor's pending action against the company); *see also* O.C.G.A. § 18-2-1

("Whenever one person, by contract or by law, is liable and bound to pay to another an amount of money, certain or uncertain, the relation of debtor and creditor exists between them.").

As further detailed below, Plaintiff pled Defendants attempted to avoid the Loan under the Uniform Fraudulent Transfer Act [UFTA], O.C.G.A § 18-2-1 *et seq.*, for which default judgment may be granted. *Hill for Credit Nation Capital, LLC v. Duscio*, 292 F. Supp. 3d 1370, 1376-77 (N.D. Ga. 2018).

### A.  Defendants are Jointly Liable as Conspirators for the Relief Sought.

Defendants admitted they did and/or conspired to make false/misleading representations or omissions to Plaintiff through Navasard/ICAR to induce Plaintiff to fund the Loan, which they never intended to or could not repay. (Complaint ¶¶ 35-36.) A plaintiff may recover for civil conspiracy to commit a tort. *Cook v. Robinson*, 216 Ga. 328, 328-29, 116 S.E.2d 742 (1960); *Lucky Capital Mgmt. v. Miller & Martin, PLLC*, 762 F. App'x. 719, 726-727 (11th Cir. 2019). Defendants admitted to conspiring to fraudulently inducing Plaintiff to pay the Funds to Navasard /ICAR and not securing their repayment with all Defendants and their property, who are also jointly liable.

### B.  Defendants are Jointly Liable for the Relief Sought as Agents of Each Other.

Defendants admitted Navasard/ICAR took the Loan as agents of Pambukyan/RR. (Complaint ¶¶ 48-49.) O.C.G.A. §10–6–56 states:

> The principal shall be bound by all representations made by his agent in the business of his agency and also by his willful concealment of material facts, although they are unknown to the principal and known only by the agent.

Plaintiff's relief may be granted against Pambukyan/RR, who had notice of the misconduct of their agents, Navasard/ICAR. *Ellis v. Hibernia Sav. Bldg. & Loan Ass'n*, 180 Ga. 437, 179 S.E. 110 (Ga. 1935) (holding plaintiff could seek constructive trust against bank with notice of bank agent's misconduct in conveying property owned by plaintiff to the bank, which held the property in a constructive trust for the third party).

Plaintiff is entitled to the relief in Count I pursuant to 28 U.S.C. § 2001 *et seq.* and Georgia law. A declaratory judgment resolves a case/controversy. *Canadyne-Georgia Corp. v. Bank of Am.*, 174 F. Supp. 2d 1337, 1359-60 (M.D. Ga. 2001) (*citing* *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999)). A plaintiff must allege a continuing dispute that presents a real and immediate controversy with a definite threat of future injury. *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). Declaratory relief is determined by federal law. *Skelly Oil v. Phillips*, 339 U.S. 667, 674 (1950).

In Count I, IOU raised a real and immediate controversy of enforcing the Instruments as to all Defendants, who assumed the Loan and benefited from the Funds but did not all execute the Instruments. Given their misconduct, the Instruments should be reformed to include all Defendants. "Equity will reform a written instrument for the unilateral mistake of one party accompanied by fraud or inequitable conduct on behalf of the other party. *Cotton States Mut. Ins. Co. v. Woodruff*, 215 Ga. App. 511, 512, 451 S.E.2d 106 (1994) (citation and alteration omitted). Inequitable conduct justifying reformation may consist of a misrepresentation of fact, even if not fraud in fact. *McDonald v. Mullins*, 197 Ga. 511, 29 S.E. 2d 507 (1944). The Court may reform "an instrument to make it express the true intention of the parties, where from some cause, such as fraud, accident, or mistake, it does not express such intention." *Lee v. Am. Cent. Ins. Co.*, 214 Ga. App. 650, 653, 530 S.E.2d 727 (1999).

IOU alleged fraud and/or inequitable conduct by the Defendants, who induced IOU to approve/fund the Loan, which they never intended to repay, upon which IOU relied in just having only Navascard/ICAR execute the Loan and IOU was damaged. *City of Atlanta v. Allianz Global Risks US Ins. Co.*, CIVIL ACTION NO. 1:13-CV-2249-ODE, 2014 WL 12061535, at *9 (N.D. Ga. Aug. 8, 2014) (plaintiff pled and was permitted to proceed on claim for reformation of policy, purchased per defendant's fraud and/or negligent misrepresentations of policy coverage). Therefore, under Count I, the Court declares that the Defendant are an enter-

prise and/or partnership, assumed the Loan, and are jointly liable for the debt under the Instruments, which are reformed to reflect the Defendants as their signatories, relating back to their execution.

Plaintiff also is entitled to the relief in Count II as to all Defendants [Complaint ¶¶ 58-63] per 28 U.S.C. § 2001 *et seq*., federal and Georgia law, as an equitable lien and/or equitable mortgage is an appropriate remedy to enforce Plaintiff's security interest in the property, assets and proceeds of the Defendants, such as the Property. In Count II, IOU raised a real and immediate controversy of enforcing the Instruments to reflect they are a senior secured interest on the property, assets and proceeds of the Defendants, such as the Property, securing their payment, relating back to their execution and/or origination. The Security Agreement and Guaranty encumber all property of the Defendants as security for the Loan, even when unrecorded. (IOU does not dispute or seek to challenge the position of any holder of a prior recorded lien in the Property.) The Security Agreement states, in pertinent part, the following:

> As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under this Note and all extensions, renewals and amendments of any of the foregoing *Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible, and in each case regardless of where such Property may be located and whether such Property may be in the possession of Borrower, Lender or a third party and shall include any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible*.

(Complaint ¶ 17.)

The Northern District of Georgia applied Georgia law in enforcing a similar security agreement, not notarized or recorded, constituting a mortgage lien on real property, in ***Ingram-Singletary v. Citimortage***, CIVIL ACTION NO. 1:14-CV-1680-ELR-LTW, 2016 WL 4253511, at *2 (N.D. Ga. Feb. 4, 2016), holding:

>Under O.C.G.A. § 44-14-31, Georgia law is clear "[n]o particular form is necessary to constitute a mortgage . . . it need only clearly indicate the creation of a lien and must specify the debt for which it is given and the property upon which it is to take effect." Accordingly, as between the parties, a mortgage -- including the promissory note and security deed -- are effective between the parties once the "property owner uses that property as security for his debt to another." *Baxter v. Bayview Loan Servicing, LLC*, 301 Ga. App. 577, 583, 688 S.E.2d 363, 368 (2009) (citing *Cherokee Ins. Co. v. Gravitt*, 187 Ga. App. 179, 182-83, 369 S.E.2d 779 (1988)); *see also Hawes v. Glover*, 126 Ga. 305, 305, 55 S.E. 62, 62, 67 (1906) ("A seal is not necessary to the validity of a mortgage, even upon real estate; and a mortgage is valid, as between the parties thereto, without any attesting witness, and without being recorded . . . A mortgage is good as between the parties without any attesting witness."). Thus, "while Georgia law requires that a mortgage be in a certain form to be recordable, it does not make the existence of a mortgage dependent upon whether it satisfies the legal requirements for recording. *Baxter*, 301 Ga. App. at 583, 688 S.E.2d at 368-69. Plaintiff's argument that the Deed is not recordable does not, therefore, impact whether the Deed is effective between the parties. Accordingly, the fact that Plaintiff alleges the Deed was improperly witnessed does not serve as a basis to declare it void or ineffective.

*Ingram-Singletary*, 2016 WL 4253511 at *2 (alterations omitted).

The court in *Baxter* also upheld an unrecorded agreement as a security agreement against real estate, which satisfied O.C.G.A. §§ 44-14-30 and 44-14-31, because the documents stated the debt was to be secured by the debtor's partnership interest and by real property owned by the partnership, its sole asset; clearly identified the real property; and explicitly stated it would constitute a lien against the property and that it would be filed as such. *Baxter*, 301 Ga. App. at 582-83. The Eleventh Circuit cited *Baxter* in enforcing an unrecorded security deed against a debtor. *In re Diamond*, 698 Fed. Appx. 571, 574 (11th Cir. 2017) (enforcing unrecorded security deed, holding that, pursuant to Georgia law, a mortgage is created when a property owner uses that property as security for a debt to another, and stating that a mortgage is valid between the parties even ifthereto, it is never recorded). As in *Baxter* and as explained below, the agreement in this case reflects the creation of a lien against the real property, in favor of the creditor, as security for his sale of his interest in the partnership. *Id.* at 583.

The Security Agreement meets the above requirements for a security interest, a mortgage in the property, assets and their proceeds of Defendants, including the Property. The Guaranty references the

debtor's name(s), Property address, and Loan Number and also states the following:

### 1. GUARANTEED DEBT [Guaranty Page 1]

Guarantor agrees that the Guaranteed Debt shall consist of all amounts owed by Borrower under the Note, including: (i) the Principal amount; (ii) Note Interest; (iii) Default Interest; (iv) Late Charges, (v) Insufficient Funds Charges; (vi) amounts owed as a consequence of a declared Event of Default and acceleration by Lender; and (vii) Lender's other costs and expenses of enforcing the Note including, but not limited to, attorneys' fees, and the costs of any arbitration proceeding to enforce the Note against Borrower.

### 2. UNCONDITIONAL GUARANTY

In consideration of the loan made by Lender to Borrower, Guarantor hereby absolutely and unconditionally guarantees both payment of, and collection of, the Guaranteed Debt when due under the terms of the Note. Guarantor will pay the Guaranteed Debt in full, without setoff or counterclaim upon Lender's demand. This Guaranty shall not be affected by the genuineness, validity, regularity or enforceability of the Note, or by circumstances relating to the Note that might otherwise constitute a defense to this Guaranty. Guarantor acknowledges that there may be more than one Guarantor of the Guaranteed Debt and agrees that, in such circumstances, each Guarantor shall be joint and severally liable for the Guaranteed Debt.

### 3. CONTINUING GUARANTY

This Guaranty is a continuing and irrevocable guaranty of the Guaranteed Debt and shall remain in full force and effect until the Guaranteed Debt, and any other amounts payable under this Guaranty, are paid in full.

Accordingly, the Instruments are a senior secured interest on the property, assets and proceeds of the Defendants, such as the Properties, securing payment of its Instruments, relating back to their execution and/or origination, the general rule. **_Stowers v. BB&T Co._**, 317 Ga. App. 893, 896, 731 S.E.2d 367 (2012) (General rule is that judicial decisions apply retroactively per retroactive cancellation of deed).

Plaintiff is entitled to an equitable lien on the property of Defendants. Property "signifies real and personal things owned [and] designates the right of ownership and that which is subject to be owned and enjoyed." **_Moore v. Lindsey_**, 662 F.2d 354, 359 (5th Cir. 1981). An equitable lien can be imposed to obtain repayment of a loan fraudulently procured, such as when a promise was made without a present intent to perform, which is otherwise known as a misrepresentation

of a material fact. **Middlebrooks v. Lonas**, 246 Ga. 720, 721, 272 S.E.2d 687 (1980). Plaintiff also pled O.C.G.A § 18-2-1 *et seq*, including the Uniform Fraudulent Transfer Act ("UFTA"), which includes remedies like equitable liens and/or constructive trusts. Here, Defendants have admitted to conspiring to fraudulently induce Plaintiff to make the Loan just with Navasard/ICAR, who never intended to repay the Loan and transferred ICAR's business to evade the Loan, for which Plaintiff lacks an adequate legal remedy. **Chepstow Ltd. v. Hunt**, 381 F.3d 1077, 1089 (11th Cir. 2004). "The following acts by *debtors* shall be fraudulent against creditors . . . and as to them shall be null and void: . . . (2) Every conveyance of real or personal estate . . . made with intention to delay or defraud creditors, where such intention is known to the *taking party* . . . ." Id. (citing O.C.G.A. § 18-2-22); *see also* **Speedway Motorsports, Inc. v. Pinnacle Bank**, 315 Ga. App. 320, 330, 727 S.E. 2d 151 (2012) ("[T]o the extent [plaintiff] asserted claims for fraudulent transfers upon which relief might be granted, we think it also has stated claims for a constructive trust and equitable lien."). "[A] plaintiff could seek restitution in equity . . . where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of a constructive trust) or to give a security interest (in the case of an equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. **Eldridge v. Wachovia Corp. Long-Term Disability Plan**, 383 F. Supp.2d 1367, 1370 (N.D. Ga. 2005) (citation omitted).

Defendants admitted the Properties are subject to the Loan/Instruments, intended to encumber all property of all borrowers/recipients of the Funds, as shown above in the Security Agreement. An equitable lien may also be imposed upon real property contractually designated as subject to the lien, as the Georgia Supreme Court held in **English v. McElroy**, 62 Ga. 413, 415 (1879)

"A 'special lien' on specific property may be decreed whenever the rules of equity require this remedy. A special or equitable lien is not an estate or property in the thing itself, nor a right

to recover the thing." ***Routon v. Woodbury Banking Co.***, 209 Ga. 706, 707-08, 75 S.E.2d 561 (1953) (internal citation omitted). "It is simply a right of a special nature over the thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree . . . ." ***Collier v. Bank of Tupelo***, 190 Ga. 598, 601, 10 S.E.2d 62 (1940). "[E]quity may enforce liens created by express contracts under proper pleadings, and may protect equitable rights by impressing liens in the absence of a contract." ***Routon***, 209 Ga. at 708. "No particular form is required for an agreement to constitute a lien. It is sufficient if it clearly indicates the intention to create a lien, the debt to secure which it is given, and the property upon which it is to take effect." ***Wylly v. Screven***, 98 Ga. 213, 213, 25 S.E. 436 (896); *see also* ***Waldroup v. State***, 198 Ga. 144, 30 S.E.2d 896 (1944) ("Such title or ownership, however, is not inconsistent with the concept of the word lien as we know and understand it, for the one good and sufficient reason that the title is held for the purpose of *securing some particular debt*, and this fact necessarily imports, in and of itself, the idea of a lien.").

Record notice of Plaintiff's Secured Interest in the property, assets and proceeds of the Defendants, such as the Properties, was effective by the filing of Plaintiff's UCC-1 which contains the language of the Security Instrument and includes the names and address of Defendants Navasard and ICAR. ***In re Mun. Corrs., LLC***, 501 B.R. 119, 128, 130, 137-41 (N.D. Ga. 2013) (holding that trustee had valid, enforceable, unrecorded mortgage in real property and other collateral pursuant to O.C.G.A. § 44-14-31 of which record notice was provided by a UCC-1 financing statement).

Under Count II, the Court declares and imposes an equitable lien and/or equitable mortgage in the property, assets and proceeds of Defendants to enforce Plaintiff's Security Interest in them, relating back to their execution, including the residences of the Defendants referenced in the Complaint, 3455 Linda Vista Road, Glendale California, 91206, Parcel Id. 5660-007-008 owned by Defendant Navasard and 6717 Calhoun Ave, Van Nuys, CA 91405-4753, Parcel Id. 2237007-010, owned by Defendant Pambukyan, subject to any prior encumbrance on each property.

Count III for constructive trusts is dismissed as moot due to the relief granted on Count II.

Plaintiff is entitled to the relief in Count IV [Complaint ¶¶ 70-77] against all Defendants, including Defendant Pambukyan/RR, as the relief in Count I is granted, and a *prima-facie* claim on the Note as their unconditional promise to pay Plaintiff, executed and breached, to which any party failed to raise a defense, entitles Plaintiff to judgment. **BB&T Co. v. Sedghi**, CIVIL ACTION NO. 1:18-CV-5047-CC, 2019 WL 1904690, at *2 (N.D. Ga. Feb. 12, 2019) (citing **Brooks v. McCorkle**, 174 Ga. App. 132, 329 S.E.2d 214 (1985)); **Collins v. Regions Bank**, 282 Ga. App. 725, 639 S.E.2d 626 (2006); **Newton v. Sibley**, 273 Ga. App. 343, 615 S.E.2d 185 (2005); O.C.G.A. § 11-3-308(b). In light of the default on the Note, Plaintiff is entitled to accelerate the balance due. **Salahat v. F.D.I.C.**, 298 Ga. App. 624, 627, 680 S.E.2d 638 (2009). "In interpreting a promissory note, we first decide whether the language is clear and unambiguous. If the language is unambiguous, we enforce the agreement according to its terms." **Id.** (citing **Hammer Corp. v. Wade**, 278 Ga. App. 214, 217, 628 S.E.2d 638 (2006)). Here, the Note is unambiguous, requiring payment and permitting acceleration of the debt.

O.C.G.A. § 11-3-301 *et seq.* requires proof of the validity of the obligor's signatures and that Plaintiff is the holder of the instrument, which are both resolved by the documents attached to

this Verified Motion. Once this burden is met, then all attacks upon the note or the debt it represents must be made by affirmative defenses on which the defendants bear the burden of proof. **_Brooks_**, 174 Ga. App. at 132.  Defendants presented no defense to this action.

Plaintiff is also entitled to judgment on Count IV on the Guaranty against Defendant Navasard.  A guaranty is a contract "whereby a person obligates himself to pay the debt of another in consideration of a benefit . . . or in consideration of . . . benefit given to his principal, the principal in either instance remaining bound therefor.  Sureties, including those formerly called guarantors, are jointly and severally liable with their principal unless the contract provides otherwise."  O.C.G.A. § 10-7-1.  Once a plaintiff establishes a prima facie case by producing a guarantee and showing that it was executed, "the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense."  **_Trendmark Homes, Inc. v. Bank of N. Georgia_**, 314 Ga. App. 886, 887, 726 S.E.2d 138 (2012).  Again, Plaintiff established in this case that Navasard breached the Guaranty, and Navasard has presented no defense to Plaintiff's prima facie case.  As such, Plaintiff is entitled to judgment.

Plaintiff also is entitled to attorney's fees on the Note/Guaranty pursuant to O.C.G.A. § 13-1-11(2)(3).  Plaintiff provided the requisite notice in the Complaint, and providing such notice has resulted in fee awards in similar cases.  **_Shier v. Price_**, 152 Ga. App. 593, 595, 263 S.E.2d 466 (1979) (citing **_New House Pro., Inc. v. Commercial Plastics & Supply Corp._**, 141 Ga. App. 199, 233 S.E.2d 45 (1977)).  IOU's proposed fees are reasonable and are due to be awarded.

Judgment on the Note and/or Guaranty should be entered against Defendants Pambukyan/RR, as the Instruments are reformed in Count I.  Plaintiff alleged all elements of these claims as shown here and is entitled to this relief.  Therefore, under Count II, the Court enters judgment against the Defendants, jointly and severally, for the Loan, as detailed for which execution shall issue.

**IV.    CONCLUSION**

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion and **AWARDS** the relief under Count I of the Complaint, declares the Defendants are an enterprise and/or partnership, who assumed the Loan for which they are jointly liable for the debt under the Instruments, which are reformed to reflect the Defendants as their signatories, relating back to their execution.

The Court also **AWARDS** the relief under Count II, declares and imposes an equitable lien and/or equitable mortgage on the property of the Defendants and/or their proceeds, securing payment of Plaintiff's Instruments, relating back to their execution, including the residences of the Defendants referenced in the Complaint, 3455 Linda Vista Road, Glendale California, 91206, Parcel Id. 5660-007-008 owned by Defendant Navasard and 6717 Calhoun Ave, Van Nuys, CA 91405-4753, Parcel Id. 2237007-010, owned by Defendant Pambukyan, as an equitable lien and/or equitable mortgage is an appropriate remedy to enforce Plaintiff's security interest in the property, assets and proceeds, of the Defendants, such as the Properties, per Count II.  Plaintiff's Security Interest is effective as to third parties as of the date of its recorded UCC-1 Financing Statement on January 4, 2019.

The Court also **AWARDS** damages under Count IV, against the Defendants, jointly and severally, on the Loan's Unpaid Principal Balance of $139,887.06, interest from March 3, 2019 through December 18, 2019 for $10,244.90, attorney's fees of $15,013.10, NSF Balance of $45.00, Court Costs of $400.00 and Service of Process for $525.00 for which execution shall issue.

Counts III, V, and VI are **DISMISSED as moot**.

SO ORDERED this 17th day of January, 2020.

*s/ CLARENCE COOPER*
CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE